UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
BRIAN HUNT and KIMBERLY HUNT       )
                                   )
                                   )
           Plaintiffs,             )      CIVIL ACTION
                                   )      NO. 13-10656-WGY
      v.                           )
                                   )
DAVID MASSI, JAMES PORTER, and     )
TOWN OF FALMOUTH                   )
                                   )
                                   )
           Defendants.             )
_____)
```

YOUNG, D.J.                                    March 25, 2014

MEMORANDUM AND ORDER

## I.    INTRODUCTION

This case arises out of the arrest of Brian Hunt ("Mr.
Hunt") pursuant to the service of an arrest warrant on June 6,
2011. Mr. Hunt and Kim Hunt ("Mrs. Hunt") (collectively, "the
Hunts") bring this action against two police officers, David
Massi ("Massi") and James Porter ("Porter"), and the Town of
Falmouth, alleging ten counts, including civil rights violations
under 42 U.S.C. section 1983 for: (i) retaliation and excessive
force against the police officers; (ii) malicious prosecution
against the police officers; (iii) a Monell claim against Town
of Falmouth; (iv) negligence and vicarious liability against the

1

Town of Falmouth; (v) conspiracy; (vi) violation of the
Massachusetts Civil Rights Act, Mass. Gen. Laws c. 12 § 111;
(vii) battery by police officers; (viii) false imprisonment;
(ix) malicious prosecution; and (x) intentional infliction of
emotional distress. Compl. 5-11.

On January 22, 2014, this Court heard oral arguments and
granted the defendants' motion for summary judgment on count III
(Monell claim), count IV (negligence/vicarious liability), count
V (conspiracy), count VI (Massachusetts Civil Rights Act
violation by the Town of Falmouth), count VIII (false
imprisonment), count X (intentional infliction of emotional
distress), and the loss of consortium claim; and took under
advisement the defendants' motion for summary judgment as to
count I (use of excessive force), count II and IX (malicious
prosecution), count VII (battery) and count VI (Massachusetts
Civil Rights Act violation by the police officers). Mot. Hr'g
Tr., ECF No. 32. Upon review of the parties' submissions, the
relevant portions of the record including a compact disc
depicting the arrest on video, and the applicable law, the Court
rules as follows:

**A.    Procedural Posture**

On March 21, 2013, the Hunts filed this complaint against
the police officers and the Town of Falmouth. Compl., ECF No. 1.
On November 27, 2013, the police officers and the Town of

Falmouth filed a motion for summary judgment, together with a memorandum of law supporting the motion. Defs.' Mot. Summ. J., ECF No. 18; Defs.' Mem. Supp. Mot. Summ. J., ECF. No. 19. The Hunts opposed the motion on January 2, 2014. Pls.' Opp'n Defs.' Mot. Summ. J., ECF No. 27. On January 9, 2013, the police officers and the Town of Falmouth filed a reply to the Hunts' opposition to the motion for summary judgment. Defs.' Reply Pls.' Opp'n Defs.' Mot. Summ. J., ECF No. 30. On January 22, 2014 the Court heard oral arguments. Mot. Hr'g Tr., ECF No. 32.

### B.   Undisputed Facts

On June 2, 2011, the New Bedford District Court issued an arrest warrant and commanded officers Massi and Porter to arrest Mr. Hunt. Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 2, True Warrant – Commonwealth of Massachusetts – Warrant Management System ("True Warrant"), ECF No. 19. The arrest was ordered due to an unpaid traffic violation fine. Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 6, Brian Hunt's Examination, ("Mr. Hunt's Examination"), ECF. No. 19-10. It was later discovered, however, that Mr. Hunt had paid the fine but the Town of New Bedford mistakenly failed to record the payment.[1] Id. The complaint

---

[1]    Though unrelated to the events that trigger this action, the police officers and the Town of Falmouth state that during 2011, Mr. Hunt was involved in a major cocaine and heroin distribution ring in Cape Cod and, after a bench trial, the Falmouth District Court convicted him of conspiring to violate drug laws. Mr. Hunt's Deposition, 96-99; Defs.' Mem. Law Supp.

states that the arrest warrant was a pretext for arresting Mr. Hunt and that the real reason was Mr. Hunt publishing a book about his son's "sexting" issues in which he criticized the Falmouth Police Department. Compl. 3, 5. In his deposition, however, Mr. Hunt stated that he knew he was arrested for the traffic violation, and denied ever criticizing the Falmouth Police Department. Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 7, Brian Hunt's Deposition, ("Mr. Hunt's Deposition"), ECF. No. 19, 91-92.

The arrest occurred during the early morning of June 6, 2011. Pls.' Opp'n Defs.' Mot. Summ. J. 2. Porter, Massi, and other Falmouth police officers went to the Hunts' house to serve the warrant and arrest Mr. Hunt. Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 3, Falmouth Police Reports ("Police Reports"), ECF No. 19. Porter and Massi rang the bell and told Mrs. Hunt that they needed to speak to Mr. Hunt. Pls' Opp'n Defs.' Mot. Summ. J. 1. Mrs. Hunt turned around and, followed by the police officers, walked to the bedroom where they found Mr. Hunt. Id. 2. Prior to this day, the Hunts had never seen officers Massi or Porter. Id. Massi told Mr. Hunt that he was under arrest and that he had to go with them. Mr. Hunt's Deposition 49.

---

Mot. Summ. J., Ex. 1, "Operation Buzzards Prey Disrupts Cape Cod Drug Ring" capenews.com, ("Newspaper article"), ECF. No. 19-1.

The Hunts informed the police officers that Mr. Hunt had been released from the hospital a week before after having had stomach surgery, and that he needed to be handcuffed in the front because he was still recovering from the surgery. Defs.' Mot. Summ. J. 3; Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 4, Kim Hunt's Examination, ("Mrs. Hunt's Examination"), ECF. No. 19-39; Mr. Hunt's Deposition 51-53. The officers saw Mr. Hunt's stitches but refused to handcuff Mr. Hunt in the front because they considered that no injury could result from handcuffing him in the back. Id.

Massi thereafter grabbed Mr. Hunt´s arm and pushed him back down on the bed and to the floor. Id. 54. According to Mr. Hunt's testimony, he did not try to defend or protect himself because he was too weak due to the surgery. Id. 55. After being pushed on the floor, Porter jumped over Mr. Hunt and sat on his legs while Massi grabbed his arm and handcuffed him in the back. Id. 57. The officers then lifted up Mr. Hunt and pushed him down to the floor again, where he was kneed in the leg and the back. Id. 58. Part of the altercation was captured on a video tapped by Mr. Hunt's son. Defs.' Mot. Summ. J. 3; Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 9, Mr. Hunt Son's Video, ("The Video"), ECF. No. 19. Mr. Hunt also asked the officers to loosen up the handcuffs but again they refused and took him to the police station. Mr. Hunt's Deposition 61. As a result of Mr. Hunt's

complaints about pain, he was taken by ambulance from the police station to the Falmouth Hospital, where he remained for approximately 10 hours. Id. 79. The emergency room report states that nothing could have been damaged during the altercation because the surgery was a laparoscopic lysis of adhesions. Defs.' Mot. Summ. J. 3; Defs.' Mem. Law Supp. Mot. Summ. J., Ex. 11, Falmouth Hospital Emergency Record, ("Emergency Room Report"), ECF. No. 19. While Mr. Hunt was at the hospital, the Clerk Magistrate of the Falmouth District Court arrived and released Mr. Hunt on his own personal recognizance. Pls.' Opp'n Defs.' Mot. Summ. J. 2.

After the altercation, the Police Officers charged Mr. Hunt with resisting arrest and assault and battery on a police officer but, after a two-day trial, Mr. Hunt was found not guilty. Id.

Mr. Hunt claims that he suffered from knee and back pain after the incident. Mr. Hunt's Deposition 27-33. He alleges that he finds it emotionally distressing to see officers Massi and Porter, and that local newspaper coverage of the incident caused him embarrassment. Id. at 138. He has suffered neither from depression nor anxiety, nor has he visited any therapist or mental health counselor. Id. at 139.

C.    **Federal Jurisdiction**

This court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Hunts allege violations of 42 U.S.C. § 1983.

## II.    ANALYSIS

The police officers and the Town of Falmouth moved for summary judgment arguing that: (i) the officers are entitled to qualified immunity, (ii) the officers did not use excessive force in effectuating Mr. Hunt's arrest, and (iii) there was probable cause for Mr. Hunt's arrest. Defs.' Mem. Law Supp. Mot. Summ. J. 1.

At the January 22, 2014 motion hearing, this Court from the bench allowed the defendants' motion for summary judgment as to the counts set forth in section I above. This memorandum, therefore, addresses the defendants' motion for summary judgment only as to counts I (use of excessive force), II (malicious prosecution), and VI (Massachusetts Civil Rights Act violation by the police officers), and VII (battery).

### A.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable

inferences in that party's favor." <u>Barbour</u> v. <u>Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." <u>Id.</u> (citing <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 325 (1986)). The Court must disregard evidence proffered by a party bearing the burden of proof wherever a jury would be free to disbelieve such evidence. <u>Reeves</u> v. <u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000).

**B.   Overview of Qualified Immunity**

Qualified immunity protects public officials from civil liability under 42 U.S.C. § 1983, as long as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. <u>See</u> <u>Veilleux</u> v. <u>Perschau</u>, 101 F.3d 1, 2 (1st Cir. 1996) (citing <u>Hunter</u> v. <u>Bryant</u>, 502 U.S. 224, 228 (1991)). This privilege constitutes immunity from suit rather than a defense against liability and, therefore, the immunity question ought be answered before the case goes to trial. <u>See</u> <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 201 (2001).

When an individual alleges that police officers violated his constitutional rights, the Supreme Court analyzes whether

qualified immunity applies under a three-part test. See id. [2]

First, taking the facts in the light most favorable to the party

alleging the injury, the question is whether the facts alleged

show that the officer violated a constitutional right. See id.

The second step is to ask whether the right was clearly

established. See id. The third prong of the analysis focuses on

whether an objectively reasonable officer in the defendant's

position would have understood that his action violated the

plaintiff's rights. See id. at 205.

## C. Count I. Violation of 42 U.S.C. § 1983. Retaliation and Excessive Force

For the purposes of this motion, Mr. Hunt concedes there was

a right to arrest him and narrows his opposition to the claim of

excessive force. Pls.' Opp'n Defs.' Mot. Summ. J. 3. This

analysis, therefore, does not address Mr. Hunt's retaliation

claim but only the use of excessive force in the course of the

arrest.

### 1. Prong One. The Constitutional Violation

The inquiry before this Court becomes whether the routine

procedure of handcuffing an arrestee behind the back can

constitute excessive force in violation of the Fourth Amendment,

---

[2] The Supreme Court gave lower courts the flexibility to determine whether following the three-step Saucier procedure was appropriate in each case. See Pearson v. Callahan, 555 U.S. 223, 242 (2009). Thus, the analysis is not mandatory but subject to the court´s discretion.

when a non-threatening arrestee for a minor crime (like a
traffic violation) informs the police that he has just been
released from the hospital after surgery, and requests that he
be handcuffed with his hands in front.

The Fourth Amendment protects citizens against use of
excessive force in the course of an arrest. See Graham v.
Connor, 490 U.S. 386, 394 (1989). The use of force is contrary
to the Fourth Amendment if it is excessive under objective
standards of reasonableness. See id. at 396. In evaluating the
objective reasonableness of the force used, the Graham case
considers three factors: "(i) the severity of the crime at
issue, (ii) whether the suspect poses an immediate threat to the
safety of the officers or others, and (iii) whether he is
actively resisting arrest or attempting to evade arrest by
flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9
(1985)).

Here, all three Graham factors weigh heavily in Mr. Hunt's
favor. Parties to this case agree that Mr. Hunt was being
arrested for a minor offense, allegedly not paying a traffic
violation fine. Defs.' Mem. Law. Mot. Summ. J. 5. It is also
undisputed that the Hunts told the officers that he had recently
been through a surgery and needed to be handcuffed in the front
to avoid being injured. Mr. Hunt's Deposition 51. Despite seeing
the stitches, the police officers pushed him down the floor,

kneed him and handcuffed him in the back. Id. at 53. Mr. Hunt also claims that he did not try to protect himself or resist the arrest in any way. Id. at 55-56. Mr. Hunt allegations are strengthened by the video recorded by his son, which shows the officers pushing Mr. Hunt to the floor and kneeing him. See The Video.

The role of the video in the present analysis bears a resemblance to the video at the center of Scott v. Harris, 550 U.S. 372 (2007), and the devastating analysis of that opinion in Dan M. Kahan, et. al., Whose Eyes Are You Going to Believe? Scott v. Harris and the Perils of Cognitive Illiberalism, 122 Harv. L. Rev. 837 (2009) ("Whose Eyes").

I have reviewed the video. What I personally think of it is immaterial. Cf. Whose Eyes at 839-840 (quoting the transcript of the oral argument in Scott).

The legal question is akin to ruling on the sufficiency of the evidence, i.e. could an American jury, properly impaneled and accurately instructed as to the controlling law, reasonably conclude upon the evidence favorable to the Hunts that the police officer used excessive force in making the arrest? Recognizing the jury as the "conscience of the community," Witherspoon v. State of Illinois, 391 U.S. 510, 519 (1968), it must be accorded a wide range of judgment in addressing this issue. Whose Eyes at 901.

This Court rules that the Hunts' evidence is sufficient to get Mr. Hunt to the jury. Of course this ruling contains an evaluative element. It is significant to note, however, that the evaluation is in no way an evaluation of the video. It is, rather, of what this Court thinks a jury could infer from the video.

Here, the Hunts' evidence is sufficiently strong for a fact finder to conclude that that officers violated Mr. Hunt´s constitutional right to be free from an unreasonable exercise of force when they handcuffed him in the back, pushed him down the floor and kneed him in the back and leg, ignoring his request that he needed to be handcuffed in the front.

## 2. Prong Two. The Right was Clearly Established.

The First Circuit has observed that a right is clearly established when there is existing case law giving "the defendants fair warning that their conduct violated the plaintiff's constitutional rights." Suboh v. District Attorney's Office of Suffolk District, 298 F.3d 81, 93 (1st Cir. 2002); see also Raiche v. Pietroski, 623 F.3d 30, 38 (1st Cir. 2010) (holding that the right is clearly established if courts have previously ruled that similar conduct was unconstitutional, or if the conduct is such an obvious violation of the Fourth

Amendment that a reasonable officer would not have required prior case law on the point).

One judge in this District has previously held that a police officer had no qualified immunity and might be found to have used excessive force when he refused to handcuff an injured traffic violation arrestee in the front. Aceto v. Kachajian, 240 F. Supp. 2d 121, 124 (D. Mass. 2003) (Saris, J.) (denying motion for summary judgment even though the arrestee did not have any sign of injury, because she informed the officer of her injured shoulder). Other courts have also held that refusing to handcuff an arrestee in the front constitutes excessive force when the arrestee claims that he is injured. See, e.g., Howard v. Dickerson, 34 F.3d 978 (10th Cir. 1994) (denying officer's motion for summary judgment because he showed deliberate indifference to a medical condition by handcuffing arrestee behind her back when she was wearing a neck brace, she told the officer of her injury and recent surgery, and third party confirmed that plaintiff should not be handcuffed behind her back); Eason v. Anoka-Hennepin E. Metro Narcotics & Violent Crimes Task Force, No. 00-311 PAM/SRN, 2002 WL 1303023 at *5 (D. Minn. June 6, 2002) (concluding that arresting officers are required to take an arrestee's preexisting injury into account, assessing the level of force needed in each case); Caron v. Hester, No. 00-394-M, 2001 WL 1568761 at *5 (D.N.H. Nov. 13,

2001) (recognizing courts generally agree that officers must take note of the suspect's complaints about injuries and make some effort to accommodate the claimed conditions).

The cases cited establish that when a non-threatening, non-flight-risk arrestee for a minor crime tells the police he suffers from an injury that would be exacerbated by handcuffing his arms behind his back, a factual issue implicating excessive force is raised, even if the injury is not visible.

### 3. Prong Three. Whether a Reasonable Officer Would Understand his Conduct was Unlawful.

The dispositive inquiry is whether a reasonable officer would understand that his conduct was unlawful in the situation he confronted. See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Although not "every push or shove" will reach the level required for an actionable excessive force claim, Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 352 (1st Cir. 1995), no reasonably competent officer would have thought that a non-threatening arrestee like Mr. Hunt, who had just been released from the hospital and was charged with a traffic violation posed a risk of flight or evading arrest. Any reasonable officer confronting Hunt's situation should have known that handcuffing his arms behind his back in such circumstances could constitute unlawful excessive force. See Aceto, 240 F. Supp. 2d at 127.

The use of violence against individuals who pose no safety threat is unreasonable, and that fact would have been understood by an objectively reasonable officer. See Asociacion de Periodistas de Puerto Rico v. Mueller, 529 F.3d 52, 60 (1st Cir. 2008).

Accordingly, officers Massi and Porter are not entitled to qualified immunity and this Court DENIES their motion for summary judgment on the excessive force claim.

**D.   Count VII. Battery by the Police Officers.**

Under Massachusetts law, police officers are liable for assault and battery when they use excessive force in conducting an arrest. Powers v. Sturtevant, 199 Mass. 265, 266 (1908). The First Circuit has ruled that when a plaintiff alleges both a section 1983 excessive force claim and common law claims for assault and battery, the court's "determination of the reasonableness of the force used under section 1983 controls [the] determination of the reasonableness of the force used under the common law assault and battery claims." Raiche, 623 F.3d at 40. Because the police officers are not entitled to qualified immunity as to Mr. Hunt's section 1983 claim and potentially used excessive force when arresting him, this Court DENIES the police officers' motion for summary judgment on the battery claim.

**E.    Count II. Violation of 42 U.S.C. § 1983 Though Malicious Prosecution. Count IX. Common Law Malicious Prosecution**

Although it is not completely clear from Mr. Hunt´s complaint and opposition to the motion for summary judgment, it appears that he attempts to raise dual malicious prosecution claims against the police officers based upon two events: (1) his arrest on June 6, 2011; and (2) his prosecution for assault and battery by the police officers. Compl. 6; Pls.' Opp'n Defs.' Mot. Summ. J. 5-6.

The elements of the common law action for malicious prosecution in Massachusetts are: "(i) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (ii) the termination of the proceeding in favor of the accused; (iii) an absence of probable cause for the charges; and (iv) actual malice." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314 (1991)).

Malicious prosecution can sometimes imply a violation of the Fourth Amendment and, thus, constitute ground for a cause of action under section 1983. See id. at 54. To prevail in such cases, the plaintiff must prove "the absence of probable cause to initiate proceedings." Meehan v. Town of Plymouth, 167 F.3d 85, 89 (1st Cir. 1999).

### 1. Malicious Prosecution as to Mr. Hunt's arrest on June 6, 2011

In his complaint, Mr. Hunt alleges that by arresting him on June 6, 2011, the police officers maliciously prosecuted him, violating several constitutional rights, including his right to be free from arrest without probable cause. Compl. 6. In his opposition to the police officers' motion, however, he concedes that "a right to arrest" existed. Pls.' Opp'n Defs.' Mot. Summ. J. Accordingly, this Court concludes that Mr. Hunt has dropped his claim for malicious prosecution on this ground and grants the police officers' motion for summary judgment thereon.

Even assuming Mr. Hunt has not waived his malicious prosecution claim arising out of this arrest, other considerations drive this Court to the same conclusion. The arrest was made pursuant to an arrest warrant, and there is no indication that the arrest warrant was not facially valid or that the police officers lacked the authority to execute it. Furthermore, other than executing the warrant, there is no evidence that the police officers otherwise took part in the legal process or were involved in collecting the traffic violation fine. See Felix v. Lugas, No. 122250, 2004 WL 1775996 at *9 (D. Mass. Mar. 2, 2004) (Bowler, M.J.) (recommending to grant summary judgment on the malicious prosecution claim because police officers had an arrest warrant, and they were not

involved in the proceedings that originated the warrant). Mr.
Hunt's malicious prosecution claim against the police officers
as to the June 6, 2011 arrest fails to survive summary judgment.

> **2.     Malicious Prosecution as to the Charges
> Brought by the Police Officers After the
> Altercation**

As to the second event that might trigger a malicious
prosecution claim, the inquiry is whether the defendants had
probable cause to initiate the criminal charges against Mr. Hunt
for resisting arrest, and assault and battery.

Probable cause is judged by an objective standard, asking
whether "the facts and circumstances were sufficient to warrant
a reasonable person in believing that the suspect had or was
committing a crime." Felix, 2004 WL 1775996 at *6. "The quantity
and quality of proof necessary to ground a showing of probable
cause is not the same as the quantity and quality of proof
necessary to convict." Roche v. John Hancock Mutual Life
Insurance Co., 81 F.3d 249, 255 (1st Cir. 1996).

The police officers charged Mr. Hunt with resisting arrest
and assault and battery. Defs.' Mot. Summ. J., Ex. 12, Criminal
Docket and Criminal Complaint, ("Criminal Records"), ECF. No.
19-1. In their reports, they claim that Mr. Hunt initially
refused to see the police officers, resisted being handcuffed,
and hit one of the officers. Police Reports 3-12. According to
Mr. and Mrs. Hunt's versions, however, Mr. Hunt did not try to

protect himself or resist in any way. Mr. Hunt's Deposition 55; Mrs. Hunt's Deposition 62.

Because the parties' testimonies about Mr. Hunt resisting the arrest differ, there are disputed issues of material fact as to whether the police officers had probable cause to initiate prosecution against Mr. Hunt for resisting arrest, thus precluding summary judgment. Accordingly, this court DENIES the police officers' motion for summary judgment for malicious prosecution as to the charges brought by the police officers after the altercation.

## F. Count VI. Violation of Massachusetts Civil Rights Act ("MCRA")

At the January 22, 2014 motion session, this Court granted the Town of Falmouth's motion for summary judgment on this count because a municipality is not a person subject to liability under the Massachusetts Civil Rights Act ("MCRA"). See Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 592-593 (2001). The analysis here is limited to the police officers' motion for summary judgment.

The MCRA provides a cause of action for an individual whose rights under the Constitution or laws of either the United States or the Commonwealth of Massachusetts have been violated by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, §§ 11H & I.

The Supreme Judicial Court of Massachusetts and the First Circuit have held that MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under section 1983. <u>See</u> <u>Duarte</u> v. <u>Healy</u>, 405 Mass. 43, 46 (1989); <u>Raiche</u>, 623 F.3d at 40. Mr. Hunt's MCRA claim, like his section 1983 claim, is based on the allegation that the officers used excessive force when they arrested him. Because the police officers are not protected by qualified immunity with respect to the section 1983 excessive force claim, this Court likewise conclude that they are not entitled to qualified immunity against the MCRA claim alleging excessive force. The Court hereby DENIES Defendants' motion for summary judgment on this count.

## III. CONCLUSION

For the foregoing reasons, this Court DENIES the defendants' motion for summary judgment as to count I (use of excessive force), count II and IX (malicious prosecution only as to the charges brought by the police officers against Mr. Hunt), count VI (the police officers´ Massachusetts Civil Rights Act violation), and count VII (battery); and GRANTS the motion as to counts II and IX (malicious prosecution as to the June 6, 2011 arrest).

**SO ORDERED.**                    /s/ William G. Young
                                   WILLIAM G. YOUNG
                                   DISTRICT JUDGE